# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

STEPHEN J. HOFFMAN,       )
                               )
Plaintiff,          )
                               )
vs.                   )    NO. 1:09-CV-251
                               )
CAREFIRST OF FORT WAYNE, INC.,)
d/b/a ADVANCED HEALTHCARE,    )
                               )
Defendant.          )

## OPINION AND ORDER

This matter is before the Court on: (1) Defendant's Motion for Summary Judgment, filed by Defendant, Carefirst of Fort Wayne, Inc. d/b/a Advanced Healthcare, on April 30, 2010 (DE #14); and (2) Defendant's Motion to Strike Affidavit of Esteban Marcos Coria and Exhibit A to the Affidavit of Stephen J. Hoffman, filed by Defendant, Carefirst of Fort Wayne, Inc. d/b/a Advanced Healthcare, on June 14, 2010 (DE #18). For the reasons set forth below, the motion to strike (DE #18) is **DENIED**. The motion for summary judgment (DE #14) is also **DENIED**.

BACKGROUND

Plaintiff, Stephen J. Hoffman, filed his complaint on September 8, 2009, and alleged that his employer, Defendant Carefirst of Fort Wayne, Inc. d/b/a Advanced Healthcare ("Advanced Healthcare"), violated the Americans with Disabilities Act ("ADA"),

42 U.S.C. § 12101 *et seq.*, as amended by the ADA Amendments of 2008, when it allegedly terminated him on January 30, 2009. Hoffman claims he is a qualified individual with a disability under the ADA because his renal cell carcinoma (which was in remission at the time of the alleged termination), constitutes a disability under the recent ADA Amendments, and Advanced Healthcare unlawfully terminated his employment when it failed to offer him a reasonable accommodation. Additionally, Hoffman alleges Advanced Healthcare unlawfully terminated his employment because it regarded him as being disabled.

Advanced Healthcare filed the instant motion for summary judgment on April 30, 2010, arguing that summary judgment is appropriate because there are no genuine issues of material fact. Specifically, Advanced Healthcare argues that Hoffman failed to establish a prima facie case of discrimination because he is not "disabled" as defined by the ADA, Hoffman's cancer in remission did not substantially limit a major life activity, and he was not "regarded as disabled" by Advanced Healthcare. In its reply memorandum, Advanced Healthcare contends that even if Hoffman did establish a prima facie case, his claim still fails because Advanced Healthcare offered a reasonable accommodation.

Advanced Healthcare filed the instant motion to strike on June 14, 2010, asking the Court to strike the affidavit of Esteban Marcos Coria tendered by Hoffman because he was not previously

disclosed as a witness, and to strike Exhibit A to Hoffman's affidavit which are Hoffman's notes from his last days of employment because the notes are inadmissible hearsay. Hoffman responds that it was proper to obtain an opposing affidavit from Coria in response to the motion for summary judgment, and that Hoffman's notes are admissible as Plaintiff's own statements, recorded recollections, and admissions. Both motions are fully briefed and ripe for adjudication.

DISCUSSION

Motion to Strike

First, Advanced Healthcare asks the Court to strike the affidavit of Esteban Marcos Coria (Ex. 3, DE #16-5) under Federal Rules of Civil Procedure 26(a)(1) and 37(c)(1), arguing it was improper for Hoffman not to previously disclose him as a witness. Local Rule 56.1 provides that, in opposing a motion for summary judgment, the non-moving party shall file a "Statement of Genuine Issues" "setting forth, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence, all material facts as to which it is contended there exists a genuine issue necessary to be litigated." L.R. 56.1(a). As contended by Hoffman, it is common practice for parties to file such affidavits in opposition to a motion for summary judgment. This Court is unaware of any authority supporting Advanced

Healthcare's argument that a lay person like Esteban Marcos Coria (who was an employee at Advanced Healthcare, and worked alongside Hoffman), must be disclosed in the initial disclosures under Rule 26(a)(1). Advanced Healthcare cites *Salgado v. General Motors Corp.*, 150 F.3d 735 (7th Cir. 1998), but in that case, the Court excluded expert testimony because the plaintiff violated the deadline for submitting expert witness reports. In this case, Coria was a fellow employee who knew Hoffman, and did not provide any expert testimony. As such, the Coria affidavit is admissible.

Second, Advanced Healthcare asks the Court to strike Hoffman's purported notes of his last days of employment, attached to his affidavit (Ex. 2, DE #16-4), arguing the notes are inadmissible hearsay. The remedy requested by Advanced Healthcare, which is apparently to strike the 2 pages of type written notes in their entirety, is overly broad. Certainly, some of the notes prepared by Hoffman (and previously disclosed to Advanced Healthcare), are admissible as statements adopted by Hoffman (a party), or recorded recollections under Federal Rule of Evidence Rule 803(5). Additionally, statements in the notes made by David Long (Hoffman's supervisor), are admissions by the party-opponent under Rule 801(d)(2)(D). To the extent Hoffman's notes contain statements made by other people (such as a nurse and Hoffman's attorney), Hoffman claims these statements are not offered for the truth of the matters asserted, but are included so the notes can be viewed

in context.  Moreover, in ruling on a motion for summary judgment, the Court considers only evidence that would be admissible at trial.  *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000).  To the extent that any statements in Hoffman's notes would be inadmissible if he offered them at trial, the Court will not consider them.  The Court can sift through the evidence to consider each piece under the applicable federal rules, thus there is no need to strike all of Hoffman's notes.  Accordingly, the Court denies Advanced Healthcare's motion to strike Coria's affidavit and Hoffman's notes.

<u>Summary Judgment Motion</u>

The standards that generally govern summary judgment motions are familiar.  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In other words, the record must reveal that no reasonable jury could find for the nonmovant.  *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant.

*Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993).

Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

### Undisputed Material Facts

Hoffman was hired as a service technician by Pharmacare in 2006. As a technician, he supplied patients with home medical devices such as oxygen and wheelchairs. Hoffman traveled from Pharmacare's office in Angola, Indiana, to his patients' locations by van. (Hoffman Dep., pp. 20-21.) He worked with Pharmacare from 9:00 a.m. until 5:00 p.m., Monday through Friday (40 hours per week). (Hoffman Dep., p. 21.)

In the summer of 2007, Advanced Healthcare purchased Pharmacare. Hoffman was offered a service technician position similar to the one he held with Pharmacare. (Hoffman Dep., p. 21.) On August 28, 2007, Hoffman signed a written job description for his service position, which provided, *inter alia*, as follows: "[a]ble to multi-task, prioritize care, follow complex directions and remain flexible within normal working hours and available after hours and on call." (Hoffman Dep. Ex. A.) The written job

description also provided "[l]ight day travel required and an ability to work in varying locations." (Hoffman Dep., p. 25; Hoffman Dep. Ex. A.) When Hoffman first started working for Advanced Healthcare, he still worked from 9:00 a.m. until 5:00 p.m., and he drove from his home in Angola to Advanced Healthcare's office in Angola. (Hoffman Dep., p. 27.)

In November 2007, Hoffman was diagnosed with Stage III Renal Carcinoma, and underwent surgery to remove his left kidney. (Hoffman Dep., pp. 32-33.) Hoffman informed the owners of the company (Chad Bechert and Russ Johnson) of his diagnosis and surgery, and they were supportive and told Hoffman they would "be behind [Hoffman]." (Hoffman Dep., pp. 33-34.) Hoffman took time off from his surgery and recovery, and he received short term disability benefits while on medical leave. (Hoffman Dep., pp. 34, 45.)

Hoffman returned to work at Advanced Healthcare on January 2, 2008, with no specific restrictions or limitations from his doctors on his ability to work, or the hours he could work. (Hoffman Dep., pp. 44-45.) Indeed, Hoffman worked his usual schedule throughout all of 2008. (Hoffman Dep., p. 46.) Hoffman did not make any complaints about any medical issues restricting his ability to work. (Def.'s Answ. to Pl.'s Interrog. No. 7, DE #14-2.) Although he made no complaint, Hoffman did suffer some fatigue, pain and discomfort, particularly from sitting or driving. (Hoffman Dep.,

pp. 46, 54.)  From January 2008, through January 2009, Hoffman
performed his normal job responsibilities as a service technician,
and did not miss any significant time off work (other than
regularly scheduled doctor visits).  (Hoffman Dep., pp. 54-55.)  At
some point, Hoffman converted his garage to a home office and
worked out of his house in Angola.  (Hoffman Dep., p. 75.)

Hoffman took a two-week vacation with his wife to Hawaii in
January 2009, and returned to work on January 26, 2009.  (Hoffman
Dep., pp. 53, 57.)  Upon his return, Hoffman had a conversation
with his supervisor, David Long, about events that had occurred
while Hoffman was on vacation.  (Hoffman Dep., pp. 57-58.)  Long
told Hoffman that Advanced Healthcare had acquired a contract with
the Parkview Hospital system, and that all service technicians,
including Hoffman, were needed to work overtime.  (Hoffman Dep.,
pp. 57-58.)  Hoffman responded, "[f]ine, I want to keep my job,
yes."  (Hoffman Dep., p. 58.)

Then, on Wednesday, January 28, 2009, Long called Hoffman into
a meeting.  Long began by telling Hoffman he was concerned about
his health, and how this would affect him physically.  (Hoffman
Aff. Ex. A.)  Long told Hoffman that he and the other service
technicians needed to work overtime on the new contract, between 65
and 70 hours per week.  (Hoffman Dep., p. 58; Hoffman Aff., Ex. A.)
Hoffman told him, "I can't do that [Long].  If you do that, you
will put me in the grave."  (Hoffman Dep., p. 58.)  Long also told

Hoffman that in addition to working the extra hours, he would have to come to Fort Wayne to do a night shift once a week, and to be on call on weekends.  (Hoffman Dep., p. 59.)  Hoffman did not feel singled out by these requests – he admits that the other service technicians were being asked to do overtime as well because of the new account.  (Hoffman Dep., pp. 60-61.)

The next day, January 29, 2009, Hoffman provided a handwritten note from one of his doctors, Dr. Kenneth Pennington, stating "[p]atient may not work more than 8 hours/day, 5 days/week.  Dx: Stage III renal cancer."  (Hoffman Dep., pp. 63-64; Hoffman Aff. Ex. B.)  That same afternoon, Long telephoned Hoffman to discuss the doctor's note.  (Hoffman Dep., pp. 65-66.)  Long told Hoffman he needed to investigate, and according to Hoffman, was "very confrontational."  (Hoffman Dep., p. 66.)  Long reiterated his wish that Hoffman work a 65 to 70 hour work week.  (Hoffman Dep., p. 66.)  Hoffman told him, "if you are going to make me do this seventy hour week workload, I will probably, will not be able to be employed with you.  I will have to seek employment elsewhere."  (Hoffman Dep., p. 66.)  Long ended the conversation by saying he wanted to talk with Hoffman the next day.  (Hoffman Aff. Ex. A.)

On January 30, 2009 (the next day), Hoffman and Long met in Fort Wayne at noon.  (Hoffman Dep., p. 69.)  Long said he talked to one of the owners, Chad Bechert (who was in Florida on vacation) the previous night, and that Hoffman had two options:  first, he

could hand in a letter of resignation immediately; or second, he could work the overtime like the other service technicians. (Hoffman Dep., p. 70.) Hoffman said he could not do either – he was not going to resign, and he couldn't do the extra work, so Long would have to fire him. (Hoffman Dep., p. 70; Hoffman Aff. Ex. A.) Long then told Hoffman that he could not write a letter of termination – it could only be written by Bechert or the Human Resources Director, Amy Fisher. (Hoffman Dep., p. 70.) Long indicated he would have Fisher type up the letter of termination and give it to Hoffman by the end of the day. (Hoffman Dep., p. 70.) Hoffman worked until the end of his day, and when he could not find Long at the end of the day, he left work. (Hoffman Dep., pp. 70-71.) Long called him when he was en route, and told Hoffman he would drop off the termination letter when Long came to Hoffman's home on Monday to pick up the company van. (Hoffman Dep., p. 73.)

Later the same day, Friday January 30, 2009, Long called Hoffman again and told Hoffman he was not going to fire Hoffman. (Hoffman Dep., p. 73.) Long told Hoffman he could limit his work to 40 hours per week, but he would need to work out of the Fort Wayne office. (Hoffman Dep., p. 73-74.) Long said that he was not firing Hoffman - he wanted Hoffman to close up his home office and work out of Fort Wayne. (Hoffman Dep., p. 73.) In response, Hoffman told Long "[y]ou have already fired me and I am not going

to add another two hours to my day, drive down to Fort Wayne, do an eight hour job and then go back home." (Hoffman Dep., p. 75.)

The next day, Saturday, January 31, 2009, Hoffman visited an attorney. That same day, Long had a telephone conversation with Hoffman that was recorded by Hoffman. In pertinent part, the conversation was:

Long: I don't claim to be a perfectionist when it comes to handling things on the HR side of things. Uh - I can't terminate somebody that's not doing . . . that's doing a fine job . . . there's no cause for termination for you.

Hoffman: Well

Long: After talking with Jeff he said we're not going to terminate someone who's not . . . there's nothing in his file there's nothing to terminate. What we can say is we want you to be working there and I need to do some investigation into your doctor's note. . . What we're offering is . . . you can come to Ft. Wayne work your eight hour day it's over um. That's, that's our offer. That's something that. That's fine. But, we're not going to dismiss somebody when it's not a performance issue. The fact is, we need the help.

\*         \*         \*         \*         \*

Long: Cause like I said from the beginning I'm not I need to talk to HR about how to handle it from here. You said I wish to be terminated and I said okay if that's what you want then I'll get with Amy and Jeff because I'm not going to fire somebody without cause. We need to investigate this medical condition a little bit more. What we can offer Sam is a change whatever. Eight hours is all he can work come to Ft. Wayne do his eight hours go home . . . investigate this medical matter.

Hoffman:     So are you saying then my hours are going to
             be from 7 in the morning when I leave here to
             go down there and work the 8 – five days come
             home and get home at 6 o'clock that's three
             hours of no pay at all whereas uh from my
             whole experience has been 9-5 and you changed
             that to 8 to 5 and what I've been working is 8
             to 4 uh the whole time because I work right
             through lunch period and that is an eight hour
             day from Angola and so now you're saying my
             day has changed to an eleven hour day instead
             of an eight hour day.

Long:        I'm asking you to drive to work like everybody
             else does.  We've got guys that live in Warsaw
             guys that live in Roanoke.

     *          *          *          *          *

(Hofffman Aff. Ex. C.)

Hoffman then left a voicemail message for Long on January 31,

2009, which stated as follows:

             Hi Dave it's Sam.  Just, uh, wanted to get back
             with you, uh, about your conversation yesterday.  A
             lot of mixed messages there.    I got a, I just
             needed to know what you are planning for Monday.  I
             need to know what you're talking about there, so
             give me a call back tonight . . . .

(Hoffman Dep. Ex. K.)

On Sunday, February 1, 2009, Hoffman again left a voicemail

message for Long:

             Hi Dave it's Sam.  I'm just calling in to let you
             know, uh, I'm not feeling well, I'm sick.  Uh, uh,
             call it a sick day tomorrow.  I will not be there
             tomorrow.  Uh, just thought I'd let you know.  I'm
             going to try and talk to a doctor tomorrow, but uh,
             I'll get in touch with you later.  Ok, thanks.
             Bye.

13

(Hoffman Dep. Ex. K.)  Hoffman did not go to the doctor as planned on Monday, February 2, 2009.  (Hoffman Dep., p. 82.)

On the evening of February 2, 2009, Hoffman left a voicemail message with Long:

> Hi Dave, this is Sam.  Uh, it's, uh, Monday evening about 6:30.  Because you terminated me on Friday, uh afternoon, effective at 4 pm, uh, you can come and get the van, and, uh, equipment.  Uh, it's all gonna be loaded in the van.  Uh, whenever you want to come, you wanna come up tomorrow, that's fine.  Uh, if you, uh, need any further information, you can call my lawyer, uh, John Schwartz, at . . . .  Thanks a lot.  Bye.

(Hoffman Dep. Ex. K.)  Hoffman followed up his voicemail message with an e-mail to Long later that evening which is as follows:

> Since you terminated my employment with Advanced Healthcare on Friday the 30th of Jan., I am informing you that the van is loaded with all the equipment from my garage.  The phone and GPS are in the front seat under the workclothes.  The key is in the tailpipe.  You may come to pick up the van tomorrow.  If you have any questions you may call my attorney as I mentioned in my message to you on your cell phone this evening.  Please have Josh mail my check for the oil change and January rent.

(Hoffman Dep. Ex. L.)

Hoffman never asked any of his doctors whether it would be permissible for him to work forty hours a week, and commute to the Fort Wayne office.  (Hoffman Dep., pp. 93-94.)  When Hoffman left Dr. Pennington's office on February 26, 2009, Dr. Pennington thought Hoffman was doing well and did not need to see him for another six months.  (Hoffman Dep., p. 103.)  A CT scan performed on February 24, 2009, revealed no recurrence of the cancer.

14

(Hoffman Dep., p. 101.)  As of the date of his deposition in this case, March 10, 2010, no doctor has told Hoffman that his cancer has reoccurred.  (Hoffman Dep., p. 111.)  Although Hoffman continues to be in remission from his cancer, Dr. Pennington told Hoffman that in 80% of the cases, the cancer returns during the first two years, and that 60% die.  (Hoffman Dep., p. 42.)

### Is Hoffman Disabled Under The Recently Amended ADA?

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  "To prevail on an ADA claim, the plaintiff must show (1) he is disabled; (2) he is qualified to perform the essential function of the job with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability."  *EEOC v. Lee's Log Cabin*, 546 F.3d 438, 442 (7th Cir. 2008).  The ADA defines "disability" with respect to an individual as (A) "a physical or mental impairment that substantially limits one or more major life activities of such individual"; (B) "a record of such an impairment"; or (C) "being regarded as having such an impairment."  42 U.S.C. § 12102(1).

Hoffman claims that his Stage III renal cancer, which was admittedly in remission during the time frame that gave rise to this action, constitutes a "disability" under the ADA.  Advanced

Healthcare argues that because Hoffman did not have a physical impairment which substantially limited a major life activity in January 2009, he was not disabled under the ADA.

Effective January 1, 2009, Congress amended the ADA to "[reinstate] a broad scope of protection." *See* ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat 3553 (2008). Specifically, Congress found that the United States Supreme Court had improperly narrowed the protection intended to be afforded under the ADA, and the ADAAA rejected the holdings of *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002). Although the ADAAA left the ADA's three-category definition of "disability" intact, significant changes were made to how the categories are to be interpreted. Importantly, the ADAAA clarified that the operation of "major bodily functions," including "functions of the immune system," constitute major life activities under the ADA's first definition of disability. *Id.* at 3555. Moreover, the ADAAA very clearly provides that "an impairment that is episodic or **in remission** is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D) (emphasis added).

Not surprisingly, Advanced Healthcare argues that Hoffman did not have a physical impairment which substantially limited any major life activity in January 2009 - his cancer was in remission,

16

he returned to work without restrictions, he carried out his regular job duties of 40 hours a week as a service technician for a full year, and he did not miss any significant time off work. Moreover, Advanced Healthcare argues, without providing case law or legislative history in support of its position, that it "highly doubts that Congress intended all cancer survivors in remission, with no medical evidence of active disease, to be considered disabled as a matter of law for the rest of their lives." (Reply Mem., p. 3.) In response, Hoffman contends that the clear wording of section 12102(4)(D) ("an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active"), renders Hoffman's renal cancer (in remission) a disability.

This Court has tried in vain to find analogous case law in which the central issue is whether an individual with cancer in remission is considered "disabled" under the ADAAA. Because the ADAAA amendments have been ruled as not retroactive, *see, e.g., Winsley v. Cook County*, 563 F.3d 598, 600 n. 1 (7th Cir. 2009), at this point in time, there is a lack of case law on this issue. The Amendments went into effect on January 1, 2009. Pub. L. No. 110-325, 112 Stat. 3553. Since the alleged discriminatory action happened in this case during late January 2009, the parties agree that the Amendments apply. This is one of the first cases of its kind to make it to the summary judgment phase, where the new ADAAA

standard is applicable.

The ADAAA states that "it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations. . . ." *Id.* at 3554. Therefore, the "question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Id.* This Court is bound by the clear language of the ADAAA. Because it clearly provides that "an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active," and neither side disputes that Stage III Renal Cancer, when active, constitutes a disability, this Court must find that Hoffman was "disabled" under the ADAAA. In other words, under the ADAAA, because Hoffman had cancer in remission (and that cancer would have substantially limited a major life activity when it was active), Hoffman does not need to show that he was substantially limited in a major life activity at the actual time of the alleged adverse employment action.

This conclusion is further bolstered by the EEOC's interpretive guidance.[1] The EEOC issued a Notice of Proposed

---

[1] Advanced Healthcare argues, without citing any case law, that Hoffman is precluded from relying upon the EEOC interpretive guide to support his claim because the guidelines were not published until September 23, 2009, approximately 8 months after the actions at issue in this case. Whether or not the EEOC's regulations are "retroactive" is not the issue here. Rather, the Court includes this discussion of the EEOC's interpretation of

Rulemaking to implement the amendments in 29 C.F.R. Part 1630, which specifically provides that "cancer" is an example of "impairments that are episodic or in remission," and is therefore considered to be a disability. 29 C.F.R. 1630.2(g)(4). Additionally, it states that:

> Examples of Impairments that Will Consistently Meet the Definition of Disability - . . . include, but are not limited to - (B) Cancer, which substantially limits major life activities such as normal cell growth. . .

29 C.F.R. 1630.2(g)(5). Thus, under the clear language of the ADAAA, the Court finds that Hoffman was indeed "disabled" under the ADA.

### Did Advanced Healthcare Offer A Reasonable Accommodation?

Discrimination under the ADA may be shown in two ways: by showing a failure to accommodate or by presenting evidence of disparate treatment. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001). In this case, Hoffman asserts that Advanced Healthcare failed to accommodate him. To establish a failure to accommodate claim, the plaintiff must show the employer was aware of his disability and failed to provide a reasonable accommodation, in addition to the initial showing that he is a qualified individual with a disability. *Id.* at 572. Further, it is unlawful

----

the ADAAA (which clearly was in place at the time of the alleged discriminatory action), as another tool to glean the intended meaning of the Amendments.

for an employer to fail to make reasonable accommodations to the known physical limitations of an employee unless the employer can demonstrate that such accommodations would constitute an undue hardship on the business under the particular circumstances. 29 C.F.R. § 1630.9(a). Importantly, the defendant bears the burden to prove that the employee's suggested reasonable accommodation will create an undue hardship on the defendant. *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002).

Advanced Healthcare moved for summary judgment in this case. In support of its motion, it provided an 18-page memorandum, addressing whether Hoffman was disabled/regarded as disabled under the ADA. Advanced Healthcare then stated that because Hoffman failed to establish his prima facie case that he was disabled/or that Advanced Healthcare perceived him as being disabled, "there is no need for Advanced Healthcare, nor this Court, to engage in the reasonable accommodation analysis." (Mem. In Supp. of Def.'s Mot. For Summ. J., p. 17.) Then, Advanced Healthcare dropped a footnote stating "[t]he expressed willingness of Advanced Healthcare to limit Hoffman to a 40 hour work week would certainly appear to have been a reasonable accommodation." (*Id.*, n.4.) Such lack of analysis leaves the Court in a bind on a summary judgment motion.[2]

---

[2]Query whether Advanced Healthcare sufficiently raised this argument in its opening memorandum. It is well settled that when a party raises an argument for the first time in a reply brief, it is deemed waived. *See, e.g., Nelson v. LaCrosse County District Attorney*, 301 F.3d 820, 836 (7th Cir. 2002). Even

In its response in opposition, Hoffman did argue that Hoffman's desire to continue his normal hours and work out of Angola (so he would not have to add 2 hours to each workday commuting to Fort Wayne), was reasonable, and that Advanced Healthcare failed to carry its burden to show that the accommodation would cause an undue hardship. (Pl.'s Br. In Opp., pp. 8-9.) Finally, in its reply memorandum, Advanced Healthcare cursorily argued that the accommodation Hoffman desired was not one that Advanced Healthcare was required to provide, citing *Hoffman v. Caterpillar*, 256 F.3d 568, 577 (7th Cir. 2001); *Jay v. Internet Wagner, Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2001) (finding it was the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests); *Schmidt v. Methodist Hospital of Indiana, Inc.*, 89 F.3d 342, 344 (7th Cir. 1996) (stating that "[r]easonable accommodation does not require an employer to provide literally everything the disabled employee requests").

In this case, Advanced Healthcare concedes that "[t]he accommodation Hoffman himself wanted, [was] working out of Angola rather than traveling to and from Fort Wayne." (Reply Mem., p. 7.) This accommodation seems reasonable on its face. Hoffman already had a home office in Angola, and had clients in the vicinity.

---

assuming, *arguendo*, that Advanced Healthcare did not waive the argument regarding reasonable accommodation, as set forth in more detail below, Advanced Healthcare's position still fails.

According to an affidavit by Esteban Marcos Coria, a co-worker of Hoffman's, after Hoffman no longer worked for Advanced Healthcare, he and other service technicians "were responsible, almost daily, for SEVERAL deliveries to Angola and the surrounding area including Kendallville, Howe, Orland, Fremont, and even cities in Northwestern Ohio and Southeastern Michigan." (Coria Aff., ¶ 6 (emphasis in original).) After Hoffman's departure, the increased workload for the other service technicians increased the overtime that Advanced Healthcare had to pay, as well as additional expenses for driving. (*Id.* ¶¶ 7, 8.) As such, Hoffman has carried his initial burden of showing that his proposed accommodation was reasonable on its face.

Advanced Healthcare baldly retorts that it was not required to provide this accommodation sought by Hoffman. However, Advanced Healthcare fails to carry its burden of showing that the accommodation would create an undue hardship on the defendant. *Oconomowoc*, 300 F.3d at 783; *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) (holding once the plaintiffs have made a prima facie showing that the accommodation is reasonable on its face, the defendant must come forward to demonstrate unreasonableness or undue hardship in the particular circumstances). Advanced Healthcare fails to provide any evidence that the requested accommodation would create an undue burden - how much would it cost? How would it affect other service technicians' workload?

Were there enough customers in the Angola area to justify Hoffman having a continuous home office there?  Clearly, a question of fact remains whether Hoffman's requested accommodation was reasonable. For the same reasons, although Advanced Healthcare claims its proposed accommodation was reasonable (for Hoffman to work an eight hour work day out of Fort Wayne), again, the Court lacks the evidence of the particular circumstances at this time to determine whether that proposed accommodation was truly reasonable or not. Thus, there is a triable issue as to whether Advanced Healthcare failed to provide a reasonable accommodation.

Finally, the Court notes that although Advanced Healthcare characterizes Hoffman as "voluntarily" ending his employment (Reply, p. 1), Advanced Healthcare fails to argue or provide any legal support for the proposition that Hoffman was not subject to an adverse employment action because of his disability, or that he was not terminated.  Again, because of the way Advanced Healthcare structured its very narrow motion for summary judgment, these are issues that survive in the case for another day.

CONCLUSION

For the aforementioned reasons, the motion to strike (DE #18) is **DENIED** and the motion for summary judgment (DE #14) is also **DENIED.**

DATED: August 31, 2010                    /s/ RUDY LOZANO, Judge
                                          United States District Court